## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

IN RE:                                        Case No.18-19151-LMI

RODICA A. BONCIOAGA                   Chapter 7
AKA RODICA ALINA BONCIOAGA,

Debtor.

_____/

## CENTRAL VALLEY COMMUNITY BANK'S
## MOTION FOR PROSPECTIVE RELIEF FROM AUTOMATIC STAY
### (Re: 2620 Huntington Road, Sacramento, California 95864)

Central Valley Community Bank ("Movant"), by and through undersigned counsel, files

this *Motion for Prospective Relief from the Automatic Stay*, pursuant to 11 U.S.C. §362, Rule

4001(a) of the Federal Rules of Bankruptcy Procedure, and the various other applicable

provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and

the laws of the United States of America, and in support states as follows:.

### A. STATEMENT OF FACTS

**1. Loan History**

1.       Rodica Alina Boncioaga ("Debtor") and non-filing, co-borrower Dorel Mitrut

(collectively the "Borrowers")  own certain real property located at 2620 Huntington Road,

Sacramento, California 95864 (the "Property") in Sacramento County, California, legally

described as:

**PARCEL NO. 1:**

**THE WEST 77 FEET OF THE EAST 167 FEET OF LOT 1, OF SIERRA OAKS VISTA UNIT NO. 2, A RE-SUBDIVISION OF LOTS 33, 34 AND 35 AND PORTIONS OF LOTS 36, 37 AND 38 OF OAK FIELD SACRAMENTO COUNTY, CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN THE OFFICE OF THE RECORDER OF SACRAMENTO COUNTY, CALIFORNIA, ON JANUARY 24, 1938 IN BOOK 20 OF MAPS, MAP NO. 40; SAID**

**MEASUREMENTS BEING AT RIGHT ANGLES TO THE EAST LINE OF SAID LOT 1.**

**PARCEL NO. 2:**

**ALL THAT PORTION OF LOT 1 OF SIERRA OAKS VISTA UNIT NO. 2, A RE-SUBDIVISION OF LOTS 33, 34 AND 35 AND PORTIONS OF LOTS 36, 37 AND 38 OF OAK FIELD SACRAMENTO COUNTY, CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN THE OFFICE OF THE RECORDER OF SACRAMENTO COUNTY, CALIFORNIA, ON JANUARY 24, 1938 IN BOOK 20 OF MAPS, MAP NO. 40, DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE NORTHERLY BOUNDARY OF LOT 1, SAID POINT BEARING NORTH 80 DEGREE 11'30" WEST, A DISTANCE OF 240.00 FEET TO A POINT ON THE SOUTHERLY BOUNDARY OF LOT 1; THENCE SOUTH 80 DEGREE 11'30" EAST ALONG SOUTHERLY BOUNDARY A DISTANCE OF 23.00 FEET TO A POINT, THENCE NORTH 9 DEGREE 48'30" EAST, A DISTANCE OF 240.00 FEET TO A POINT ON THE NORTHERLY BOUNDARY OF LOT; THENCE NORTH 80 DEGREE 11'30" WEST ALONG THE NORTHERLY BOUNDARY A DISTANCE OF 23.00 FEET TO THE POINT OF BEGINNING.**

2.      The Property is secured by virtue of a Promissory Note and Deed of Trust dated April 15, 2016 in the original amount of $1,500,000.00, recorded in the Public Records of Sacramento County, California in Book 20160421 at Page 1254. True and correct copies of the relevant loan documents are attached as **Composite Exhibit A.**

3.      On October 3, 2016, Central Valley Community Bancorp (the "Company") issued a press release to announce the effectiveness of the merger of Sierra Vista Bank ("SVB") into the Company's wholly-owned subsidiary, Central Valley Community Bank. The aggregate consideration paid to SVB shareholders in connection with the merger was paid in a combination of cash and shares of Company common stock that were registered under Registration Statement 333-212063, and declared effective on August 3, 2016. The press release is attached as Exhibit 99.1 to this Current Report on Form 8-K and are attached as **Exhibit B**.

4.      As of August 14, 2018, Borrowers have failed to provide adequate protection to Movant by failing to make payments from and after September 7, 2017, and failing to pay the

full amount of the matured balance pursuant to the Deed of Trust since August 30, 2017. See *Affidavit in Support of Motion for Relief from Stay* attached as **Exhibit C.**

5.      As of August 14, 2018, Movant has completed the *Indebtedness Worksheet*, wherein the total pre-petition indebtedness is $1,672,687.59 and the total post-petition indebtedness is $1,678,887.64. See *Indebtedness Worksheet* attached as **Exhibit D.**

6.      The post-petition payment address is: 7100 North Financial Drive, Suite 101, Fresno CA 93720.

7.      The estimated value of the Property is $1,527.578.28. This valuation is based on the fair market value as determined by the Debtor's Bankruptcy Schedules A/B and D. See Debtor's Bankruptcy Schedules A/B and D attached as **Exhibit E.** Thus, there is little to no equity in the Property for the benefit of unsecured creditors of the estate.

8.      Since the loan matured on August 30, 2017 and Borrowers have failed to make a payment since September 7, 2017, Movant commenced a non-judicial foreclosure action against the Property.

**2. Bankruptcy Case History**

9.      Since the commencement of the non-judicial foreclosure proceedings, Borrowers have filed three (3) bankruptcy cases. Each bankruptcy case was filed at a strategic time for the sole purpose of hindering and delaying Movant from proceeding in connection with the same. The bankruptcy cases at issue are as follows:

    a.   The First Case: Mr. Mitrut filed a Chapter 13 bankruptcy in the Northern District of California, Case No. 18-4047 on February 23, 2018. Said bankruptcy was dismissed on March 12, 2018 for failure to file a plan or schedules.

    b.   The Second Case: Mr. Mitrut filed a Chapter 11 bankruptcy on March 21, 2018, in the Southern District of Florida, Miami Division, Case No. 18-bk-13263-AJC which is currently facing potential dismissal based on a motion by the Trustee. On April 23, 2018, the Court entered an Order Granting Debtor's *Emergency Motion*

*to Extend Automatic Stay Pursuant to § 362(c)(3)(b)* [See Dkt. No 30], which provided that Movant would be permitted to set the sale date 100 days (approximately July 30, 2018) after the entry of same. Moreover on July 30, 2018, the Court further ordered that the extension of the automatic stay as to Movant was terminated and Movant was permitted to move forward with the sale of the Property [See Dkt. No. 63].

    c.   The Third Case: On the same day the automatic stay was terminated in Mr. Mitrut's Second Case, Debtor filed a voluntary petition for relief pursuant to Chapter 7 of the United States Bankruptcy Code.

10.    As previously indicated, the instant bankruptcy case is the third Bankruptcy filing between Debtor and non-filing co-borrower, Dorel Mitrut in order to stop a foreclosure sale.

11.    The Property has not been claimed exempt by Debtor. The Property has not been abandoned by the Trustee.

12.    The 341 Meeting of Creditors is currently scheduled for August 30, 2018.

13.    Borrowers are filing these bankruptcy petitions solely to hinder and delay Movant from enforcing its legitimate right to foreclose on the Property, and the Movant submits the entry of an Order granting prospective, *in rem* relief from the Automatic Stay is warranted in light of this history.

**B. ARGUMENT AND CITATION OF AUTHORITY**

14.    The Bankruptcy Code was intended to afford financially troubled debtors a breathing spell from their creditors, but it was not Congress' intent to allow debtors to enjoy their property while failing to pay their mortgages for extended periods of time. *In re Three Tuns, Inc.*, 35 B.R. 110, 111 (Bankr. E.D. Pa. 1983).

15.    Payments on the Property matured on August 30, 2017. Borrowers have not made a payment since September 7, 2017.

16.    Movant is justified in its request to have the Stay lifted as its foreclosure sale has been cancelled at least three (3) times by bankruptcies.

17.     The Eleventh Circuit has stated that "whenever a chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the Debtor's motives." *In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986).   The Courts must be more vigilant when considering the purpose for which the Chapter 13 relief is sought.

18.      While the instant bankruptcy is a Chapter 7 bankruptcy, it is clear from the history of this Property, that Debtor's motives are tainted with a questionable motive.

19.     The Court may invoke its powers under 11 U.S.C. § 105(a) and implement a mechanism to prevent the "continuing abuse of the bankruptcy process" by the Debtor. *In re Yimam*, 214 B.R. 463 (Bankr. D. Md. 1997).

20.     Movant respectfully suggests that the purpose of the Bankruptcy Code's good faith provision is to prevent the bankruptcy forum from becoming a revolving door for debtors who, without any real ability or serious intention of abiding by the duties imposed by Title 11, seek only to delay just process.

21.     Pursuant to 11 U.S.C. § 362(d)  of the Bankruptcy Code, on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection § 362(a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

> (1)   **for cause, including the lack of adequate protection of an interest in property of such party in interest;**
>
> (2)  **with respect to a stay of an act against property under subsection (a) of this section, if—**
> **(A)   the Debtor and non-filing Co-Debtor, Dorel Mitrut do not have an equity in such property; and**
> **(B)   such property is not necessary to an effective reorganization;**
>
> (3)  with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such

later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later…

(4)  **with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either**

(A)    transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B)  **multiple bankruptcy filings affecting such real property**.

(emphasis added).

## 1.    Movant is entitled to relief from stay pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2)

22.    As of August 14, 2018, the total pre-petition indebtedness is $1,672,687.59 and the total post-petition indebtedness is $1,678,887.64.

23.    Movant is unaware of the current interior condition of the Property.  Movant's position is that the Property is at substantial risk of loss or diminution of value.  As a point of reference, the estimated value of the Property is $1,527.578.28 pursuant to Debtor's schedules. As a result, there is little to no equity in the Property.

24.    Movant's security interest in the Property is being significantly jeopardized by Debtor's failure to make regular payments under the subject loan documents while Movant is prohibited from pursuing lawful remedies to protect such security interest.

25.    Moreover, the value of the Property is insufficient in and of itself to provide adequate protection to Movant, which the Bankruptcy Code requires to be provided.

26.    Cause exists for the Motion to be granted, namely the lack of adequate protection to Movant for its security interest in the Property.

27.    Moreover, the value of the Property is insufficient in and of itself to provide adequate protection to Movant, which the Bankruptcy Code requires to be provided.

28.    The Property is not necessary for the Debtor's effective reorganization. Accordingly, relief is appropriate under 11 U.S.C. § 362(d)(2).

**2.    Movant is entitled to Prospective relief pursuant to 11 U.S.C. § 362(d)(4) as this is the Third Bankruptcy Case filed between Debtor and non-filing Co-Debtor, Dorel Mitrut.**

29.    To be entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4), Movant must show that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved … **multiple bankruptcy filings affecting such real property.**

30.    This is the **Third Bankruptcy** filed by either Debtor or non-filing, co-borrower Dorel Mitrut, to cancel a scheduled Foreclosure Sale.

31.    Debtor is merely using this Chapter 7 case for the sole purpose of forestalling the collection efforts of her creditors and not to legitimately pursue an individual reorganization.

32.    Movant submits that it is entitled to prospective relief from stay for cause, to wit, the prior bankruptcy filings and the filing of the instant bankruptcy petition, which serial filings evidence a lack of good faith.

33.    Movant is also concerned that either Debtor or non-filing, co-borrower Dorel Mitrut, will file another bankruptcy petition as soon as the present Case is closed. See *In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986) ("whenever a Chapter 13 petition appears to be tainted by a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the Debtors motives").

34.    The Bankruptcy Code does not define good faith nor is there an explicit requirement that petitions be filed in good faith; yet, bankruptcy courts have repeatedly lifted the automatic stay and dismissed cases as bad faith filings.  The inference that good faith is required

in order for debtors to continue to enjoy the exceptional relief afforded by the automatic stay and the other provisions of the Code upholds the integrity of the bankruptcy courts:

> Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.  Such a standard furthers the balancing process between the interests of Debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy.  Requirement of good faith prevents abuse of the bankruptcy process by Debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes.  Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their most powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those Debtors and creditors with "clean hands."

_In re Little Creek Dev. Co._, 779 F.2d 1068, 1071-72 (5th Cir. 1986) (citations omitted).  _See also In re Waldron_, 785 F.2d 936 (11th Cir. 1986).

35.    It is clear from the history of this Mortgage account that Debtor and non-filing, co-borrower Dorel Mitrut, either does not have the ability to make payments or does not intend to make payments to Movant.

36.    In light of the foregoing, Movant argues that Debtor's and non-filing, co-borrower Dorel Mitrut's conduct does not justify continued protection under the Bankruptcy Code.

37.    Accordingly, Movant maintains that cause exists pursuant to 11 U.S.C. § 362(d)(4) for the stay to be lifted.

38.    Furthermore, Movant requests that the prior history of the account justifies measures which would restrict any future imposition of the automatic stay on its currently pending foreclosure action.

39.    Accordingly, Movant asks that the order lifting stay provide that:

a)    If a future bankruptcy is filed on the aforementioned property, Movant can submit an *ex parte* order for immediate relief in order to proceed with sale, post sale process or eviction; and that

b)    Even without a separate Stay Relief Order, Movant be authorized to proceed with a sale, post sale process or eviction if necessary, after the date of the order notwithstanding any pending or future bankruptcy by Debtor, or any assign of Debtor, any other entity that takes title through Debtor.

40.    Movant requests that the Motion be granted with prospective relief in the amount of two (2) years in order to finalize the foreclosure/eviction process.

41.    This Motion is being filed on non-negative notice prior to the §341 Meeting of Creditors. Therefore, in order to allow the Chapter 7 Trustee the opportunity to conduct the §341 Meeting and obtain the necessary information to adequately respond to the Motion, Movant requests that the hearing on this Motion be set no sooner than two weeks after the §341 Meeting, which is now scheduled for August 30, 2018. Movant waives its right to a hearing within 30 days pursuant to Section 362(e) of the Bankruptcy Code.

42.    Movant has incurred attorneys' fees in the amount of $750.00 and costs in the amount of $181.00 as a result of the necessity of filing this motion. Movant's attorneys' fees and costs are recoverable as part of the debt pursuant to the loan documents but shall not be a personal liability of Debtor.

43.    Movant respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure, so that Movant can pursue its in rem remedies without further delay.

**WHEREFORE**, Movant respectfully requests that the automatic stay be lifted so that Movant may be permitted to protect its security interest in the Property outside of the bankruptcy forum, with prospective relief for two (2) years; that Movant be permitted to contact the Debtors

for the reasons stated; that the fourteen (14) day stay set forth in Bankruptcy Rule 4001(a)(3) be waived; that if a future bankruptcy is filed on the Property, Movant can submit an ex parte order for immediate relief in order to proceed with sale, post sale process or eviction; that Even without a separate Stay Relief Order, Movant is authorized to proceed with a sale, post sale process or eviction if necessary, after the date of the order notwithstanding any pending or future bankruptcy by Debtor and non-filing Co-Debtor, Dorel Mitrut, or any assign of Debtor and non-filing Co-Debtor, Dorel Mitrut, any other entity that takes title through Debtor and non-filing Co-Debtor, Dorel Mitrut; and such other and further relief as the Court may deem just and proper.

Respectfully Submitted:

Wanda D. Murray, Bar No.: 566381
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: WMurray@aldridgepite.com

<u>**CERTIFICATE OF SERVICE**</u>

     **I HEREBY CERTIFY** that a true and correct copy of the foregoing *Motion for Relief from the Automatic Stay* was served electronically or via U.S. Mail, first-class postage prepaid, to:

<u>**DEBTOR ATTORNEY**</u>
**(via electronic notice)**
Chad T Van Horn
Chad@cvhlawgroup.com

<u>**DEBTOR**</u>
Rodica A. Boncioaga
3000 NE 190th St
# 202
Aventura, FL 33180-3182

<u>**TRUSTEE**</u>
**(via electronic notice)**
Marcia T Dunn
mdunn@dunnlawpa.com

<u>**UNITED STATES TRUSTEE**</u>
**(via electronic notice)**
Office of the US Trustee
51 S.W. 1st Ave., Suite 1204
Miami, FL 33130
USTPRegion21.MM.ECF@usdoj.gov

<u>**CO-BORROWER**</u>
Dorel Mitrut
300 190th St
Apt 202
Aventura, FL 33160-2328

Dorel Mitrut
3000 NW 190th St
#202
Aventura, FL 33180-1816

Dorel Mitrut
2620 Huntington Road
Sacramento, California 95864

Dated: September 10, 2018

/s/ *Wanda D. Murray*
Wanda D. Murray, Bar No.: 566381
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (619) 590-1385
Email: WMurray@aldridgepite.com

Certified to be a true and correct copy
**FIDELITY NATIONAL TITLE INSURA**

By _____

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,500,000.00 | 04-15-2016 | 04-15-2017 | | | | 308 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Rodica Alina Boncioaga
Dorel Mitrut
5131 Kenneth Avenue
Fair Oaks, CA  95628

**Lender:** Sierra Vista Bank
1710 Prairie City Road, #100
Folsom, CA  95630

**Principal Amount: $1,500,000.00**                           **Date of Note: April 15, 2016**

**PROMISE TO PAY.** Rodica Alina Boncioaga and Dorel Mitrut ("Borrower") jointly and severally promise to pay to Sierra Vista Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Five Hundred Thousand & 00/100 Dollars ($1,500,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.960%. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 15, 2017. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 15, 2016, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or, as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Sierra Vista Bank, 1710 Prairie City Road #100 Folsom, CA  95630.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by 4.000 percentage points.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Composite Exhibit A**

# PROMISSORY NOTE
## (Continued)

Cure Provisions. If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Sacramento County, State of California.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $22.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

COLLATERAL. Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Construction Deed of Trust dated April 15, 2016, to a trustee in favor of Lender on real property located in Sacramento County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Construction Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property located in Sacramento County, State of California.

(C) collateral described in a Commercial Security Agreement dated April 15, 2016.

LINE OF CREDIT. This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. The following person or persons are authorized to request advances and authorize payments under this line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of such authority: Rodica Alina Bonoloaga, individually; or Dorel Mitrut, individually. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

INTEREST RESERVE. If the approved construction budget for this loan includes a line item for construction period interest, and if there are budgeted funds available for that purpose, Borrower authorizes Lender to make advances on this Note to pay interest as it comes due on this Note or, alternatively, to reimburse Borrower for interest payments made by Borrower. To the extent that there is no budgeted amount for construction period interest or if interest payments due on this Note exceed the budgeted amount available for interest payments, Borrower shall pay those amounts as and when due.

INSPECTION FEE PROVISION. Your construction loan term has been determined by you and your contractor. The inspection fee was based on the draw schedule and the number of times the inspection would be performed.

If your loan requires additional inspections you will be charged the cost of each addtional inspection when performed.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Sierra Vista Bank 1710 Prairie City Road #100 Folsom, CA 95630.

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waives any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

Composite Exhibit A

## PROMISSORY NOTE
### (Continued)

Page 3

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER
AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
Rodica Alina Boncioaga

X _____
Dorel Mitrut

LaserPro, Ver. 18.1.10.003 Copr. D + H USA Corporation 1997, 2018.    All Rights Reserved.    - CA   C:\HARLAND\CFI\LPL\E20.FC   TR-1433   PR-28

Composite Exhibit A



Sacramento County Recorder
Donna Allred, Clerk/Recorder
BOOK **20160421** PAGE **1254**
Check Number  92870
Thursday, APR 21, 2016  2:55:30 PM
Ttl Pd    $51.00    Rcpt # 0009046438

INK/87/1-11

RECORDATION REQUESTED BY:
Sierra Vista Bank
1710 Prairie City Road, #100
Folsom, CA 95630

WHEN RECORDED MAIL TO:
Sierra Vista Bank
1710 Prairie City Road, #100
Folsom, CA 95630

SEND TAX NOTICES TO:
Rodica Alina Boncioaga
Dorel Mitrut
5151 Kenneth Avenue
Fair Oaks, CA 95628

FOR RECORDER'S USE ONLY

## CONSTRUCTION DEED OF TRUST

THIS DEED OF TRUST is dated April 15, 2016, among Rodica Alina Boncioaga and Dorel Mitrut, wife and husband as joint tenants, whose address is 5151 Kenneth Avenue, Fair Oaks, CA 95628 ("Trustor"); Sierra Vista Bank, whose address is 1710 Prairie City Road, #100, Folsom, CA 95630 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Fidelity National Title Company, whose address is 3620 Fair Oak Blvd, Ste 200, Sacramento, CA 95864 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way; and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Sacramento County, State of California:

PARCEL NO. 1:
THE WEST 77 FEET OF THE EAST 167 FEET OF LOT 1, OF SIERRA OAKS VISTA UNIT NO. 2, A RE-SUBDIVISION OF LOTS 33, 34 AND 35 AND PORTIONS OF LOTS 36, 37 AND 38 OF OAK FIELD SACRAMENTO COUNTY, CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN THE OFFICE OF THE RECORDER OF SACRAMENTO COUNTY, CALIFORNIA, ON JANUARY 24, 1938 IN BOOK 20 OF MAPS, MAP NO. 40; SAID MEASUREMENTS BEING AT RIGHT ANGLES TO THE EAST LINE OF SAID LOT 1.

PARCEL NO. 2:
ALL THAT PORTION OF LOT 1 OF SIERRA OAKS VISTA UNIT NO. 2, A RE-SUBDIVISION OF LOTS 33, 34 AND 35 AND PORTIONS OF LOTS 36, 37 AND 38 OF OAK FIELD SACRAMENTO COUNTY, CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN THE OFFICE OF THE RECORDER OF SACRAMENTO COUNTY, CALIFORNIA, ON JANUARY 24, 1938 IN BOOK 20 OF MAPS, MAP NO. 40, DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE NORTHERLY BOUNDARY OF LOT 1, SAID POINT BEARING NORTH 80 DEGREE 11'30" WEST, A DISTANCE OF 240.00 FEET TO A POINT ON THE SOUTHERLY BOUNDARY OF LOT 1; THENCE SOUTH 80 DEGREE 11'30" EAST ALONG SOUTHERLY BOUNDARY A DISTANCE OF 23.00 FEET TO A POINT, THENCE NORTH 9 DEGREE 48'30" EAST, A DISTANCE OF 240.00 FEET TO A POINT ON THE NORTHERLY BOUNDARY OF LOT; THENCE NORTH 80 DEGREE 11'30" WEST ALONG THE NORTHERLY BOUNDARY A DISTANCE OF 23.00 FEET TO THE POINT OF BEGINNING.

The Real Property or its address is commonly known as 2820 Huntington Road, Sacramento, CA 95864. The Assessor's Parcel Number for the Real Property is 283-0012-002.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection

Composite Exhibit A

**DEED OF TRUST**
(Continued)

Page 2

with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF TRUSTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN TRUSTOR AND LENDER OF EVEN DATE HEREWITH. ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

CONSTRUCTION MORTGAGE. This Deed of Trust is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of California.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste. Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

Removal of Improvements. Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

Lender's Right to Enter. Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

Compliance with Governmental Requirements. Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

Construction Loan. If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete

**Composite Exhibit A**

## DEED OF TRUST
### (Continued)

construction of any improvements on the Property, the improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Trustor shall pay in full all costs and expenses in connection with the work. Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Deed of Trust shall have priority over all possible liens, including those of material suppliers and workmen. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust:

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $25,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $25,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the indebtedness. If Lender holds any proceeds after payment in full of the indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the

Composite Exhibit A

**DEED OF TRUST**
**(Continued)**

Page 4

expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title. Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

Defense of Title. Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Representations and Warranties. All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

Proceedings. If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

Current Taxes, Fees and Charges. Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or

Composite Exhibit A

## DEED OF TRUST
### (Continued)

continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Trustor, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment, is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after Lender sends written

Composite Exhibit A

**DEED OF TRUST**
**(Continued)**

Page 6

notice to Trustor demanding cure of such default; (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title, in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching

Composite Exhibit A

## DEED OF TRUST
### (Continued)

records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

Rights of Trustee. Trustee shall have all of the rights and duties of Lender as set forth in this section.

POWERS AND OBLIGATIONS OF TRUSTEE. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Obligations to Notify. Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Successor Trustee. Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Sacramento County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

Acceptance by Trustee. Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

NOTICES. Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

STATEMENT OF OBLIGATION FEE. Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

APPRAISAL PROVISION. If at any time during the term of this Deed of Trust the Lender, in the reasonable exercise of its judgment, determines that it is likely that there has been a material adverse change in the value of the Real Property, Lender may obtain, at Borrower's expense, an appraisal of the Real Property prepared by an appraiser satisfactory to Lender and in a form and substance satisfactory to Lender.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Deed of Trust:

Amendments. This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Annual Reports. If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

Caption Headings. Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

Merger. There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

Choice of Venue. If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of Sacramento County, State of California.

Joint and Several Liability. All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor

Composite Exhibit A

DEED OF TRUST
(Continued)

shall mean each and every Trustor. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Severability. If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

Successors and Assigns. Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

Time is of the Essence. Time is of the essence in the performance of this Deed of Trust.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

Beneficiary. The word "Beneficiary" means Sierra Vista Bank, and its successors and assigns.

Borrower. The word "Borrower" means Rodica Alina Bonciosga and Dorel Mitrut and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Deed of Trust. The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

Default. The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100; et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

Guaranty. The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Improvements. The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

Lender. The word "Lender" means Sierra Vista Bank, its successors and assigns.

Note. The word "Note" means the promissory note dated April 15, 2016, in the original principal amount of $1,500,000.00 from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without

Composite Exhibit A

**DEED OF TRUST**
**(Continued)**

limitation all insurance proceeds and refunds of premiums from any sale or other disposition of the Property. The words "Personal Property" also include all tangible and intangible items obtained or owned by, or in the possession of Trustor that are directly or indirectly related to the acquisition, development, design, construction, permitting, marketing, or habitation of the Real Property or the Improvements to be constructed on the Real Property, whether heretofore or hereafter issued, prepared, or executed, including without limitation all permits, licenses, authorizations and approvals, trademarks and tradenames, and any and all land use entitlements, development rights, sewer capacity, approvals, density allocations and other rights or approvals relating to or authorizing the development or occupancy of the Property, plus all utility or other deposits, reimbursement rights, studies, tests, contracts, plans and specifications, relating to the Property and Improvements.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means Fidelity National Title Company, whose address is 3620 Fair Oak Blvd, Ste 200, Sacramento, CA 95864 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Rodica Alina Boncieaga and Dorel Mitrut.

EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH TRUSTOR AGREES TO ITS TERMS.

TRUSTOR:

X _____
Rodica Alina Boncieaga

X _____
Dorel Mitrut

**Composite Exhibit A**

**DEED OF TRUST**
(Continued)

Page 10

## CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

STATE OF _FLORIDA_

COUNTY OF _MIAMI DADE_ } SS

On _4/16/16_, 20 _16_ before me, _LILIANNE JULES_
(here insert name and title of the officer)

personally appeared Rodica Alina Boncioaga and Dorel Mitrut, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

LILIANNE JULES
MY COMMISSION # EE 828718
EXPIRES: September 17, 2016
Bonded Thru Budget Notary Services

(Seal)

---

**(DO NOT RECORD)**
**REQUEST FOR FULL RECONVEYANCE**
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____

Beneficiary: _____
By: _____
Its: _____

LaserPro, Ver. 16.1.10.003  Copr. D+H USA Corporation 1997, 2016.  All Rights Reserved.   - CA  G:\HARLAND\CFI.LPL\G01.FC
TR-1822 PR-20

Composite Exhibit A

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

State of _California_

County of _Sacramento_

On _April 19, 2016_ before me, _Candice May_, Notary Public,
(here insert name and title of the officer)

personally appeared _Durel Mitnit._
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature

(Seal)

CANDICE MAY
Commission # 2005163
Notary Public - California
Sacramento County
My Comm. Expires Jan 26, 2017

Composite Exhibit A

# CHANGE IN TERMS AGREEMENT

| | | | |
|---|---|---|---|
| Borrower: | Rodica Alina Boncioaga<br>Dorel Mitrut<br>3191 Kenneth Ave.<br>Fair Oaks, CA 95628 | Lender: | CENTRAL VALLEY COMMUNITY BANK, A California<br>Corporation<br>7108 N. FINANCIAL DR., STE. 101<br>FRESNO, CA 93720 |

**Principal Amount:  $1,495,000.00**                                    **Date of Agreement:  May 30, 2017**

**DESCRIPTION OF EXISTING INDEBTEDNESS.**
PROMISSORY NOTE DATED APRIL 15, 2016 FOR LOAN 545401170 IN THE AMOUNT OF $1,500,000.00. THE CURRENT PRINCIPAL BALANCE IS $1,500,000.00 AND ACCRUED INTEREST IN THE AMOUNT OF $23,875.00 FOR A TOTAL OF $1,523,875.00.

**DESCRIPTION OF COLLATERAL.**
DEED OF TRUST DATED APRIL 15, 2016 IN THE COUNTY OF SACRAMENTO, STATE OF CALIFORNIA RECORDED APRIL 21, 2016 IN BOOK 20160421 PAGE 1254.

COMMERCIAL SECURITY AGREEMENT DATED APRIL 15, 2016.

**DESCRIPTION OF CHANGE IN TERMS.**

**LINE OF CREDIT CHANGE.**  THIS LOAN IS NO LONGER A LINE OF CREDIT. ONLY THE CURRENT PRINCIPAL BALANCE IS BEING EXTENDED AND NO FURTHER ADVANCES WILL BE ALLOWED.

**INTEREST RATE CHANGE.** THE INTEREST RATE IS HEREBY CHANGED TO 7.00% PER ANNUM.

**EXTENSION.**  THE MATURITY DATE IS HEREBY CHANGED FROM APRIL 15, 2017 TO AUGUST 30, 2017. ON THIS DATE ALL OUTSTANDING PRINCIPAL PLUS ALL UNPAID ACCRUED INTEREST WILL BE DUE AND PAYABLE.

**REQUIRED PAYMENT.**  UPON SIGNING OF THIS CHANGE IN TERMS AGREEMENT, BORROWER AGREES TO PAY A PAYMENT OF PRINCIPAL AND INTEREST IN THE AMOUNT OF $23,875.00.  —Pd  *9 30/m*

**PAYMENT CHANGE AND PAYMENT SCHEDULE RESTATED.**  A PRINCIPAL AND INTEREST PAYMENT IN THE AMOUNT OF $27,500.00 WILL BE DUE JUNE 30, 2017; A PRINCIPAL AND INTEREST PAYMENT IN THE AMOUNT OF $27,500.00 WILL BE DUE JULY 30, 2017 AND ALL OUTSTANDING PRINCIPAL AND ACCRUED UNPAID INTEREST WILL BE DUE AUGUST 30, 2017.

**LENDER NAME CHANGE.**  SIERRA VISTA BANK IS NOW KNOWN AS CENTRAL VALLEY COMMUNITY BANK AS PER MERGER AGREEMENT DATED OCTOBER 1, 2016.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

**CONTINUING VALIDITY.**  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**CHANGE IN TERMS SIGNERS:**

X _____
Rodica Alina Boncioaga

X _____
Dorel Mitrut

Composite Exhibit A

## CHANGE IN TERMS AGREEMENT

**Borrower:**  Rodica Alina Bancioaga
Darel Mitrut
5151 Kenneth Ave.
Fair Oaks, Ca 95628

**Lender:**  CENTRAL VALLEY COMMUNITY BANK, A California
Corporation
7100 N. FINANCIAL DR., STE. 101
FRESNO, CA  93720

**Principal Amount:  $1,495,000.00**

**Date of Agreement:  May 30, 2017**

**DESCRIPTION OF EXISTING INDEBTEDNESS.**

PROMISSORY NOTE DATED APRIL 15, 2016 FOR LOAN 545401170 IN THE AMOUNT OF $1,500,000.00. THE CURRENT PRINCIPAL BALANCE IS $1,500,000.00 AND ACCRUED INTEREST IN THE AMOUNT OF $23,675.00 FOR A TOTAL OF $1,523,675.00.

**DESCRIPTION OF COLLATERAL.**

DEED OF TRUST DATED APRIL 15, 2016 IN THE COUNTY OF SACRAMENTO, STATE OF CALIFORNIA RECORDED APRIL 21, 2016 IN BOOK 20160421 PAGE 1254.

COMMERCIAL SECURITY AGREEMENT DATED APRIL 15, 2016.

**DESCRIPTION OF CHANGE IN TERMS.**

LINE OF CREDIT CHANGE.  THIS LOAN IS NO LONGER A LINE OF CREDIT. ONLY THE CURRENT PRINCIPAL BALANCE IS BEING EXTENDED AND NO FURTHER ADVANCES WILL BE ALLOWED.

INTEREST RATE CHANGE.  THE INTEREST RATE IS HEREBY CHANGED TO 7.00% PER ANNUM.

EXTENSION.  THE MATURITY DATE IS HEREBY CHANGED FROM APRIL 15, 2017 TO AUGUST 30, 2017. ON THIS DATE ALL OUTSTANDING PRINCIPAL PLUS ALL UNPAID ACCRUED INTEREST WILL BE DUE AND PAYABLE.

REQUIRED PAYMENT.  UPON SIGNING OF THIS CHANGE IN TERMS AGREEMENT, BORROWER AGREES TO PAY A PAYMENT OF PRINCIPAL AND INTEREST IN THE AMOUNT OF $28,675.00

PAYMENT CHANGE AND PAYMENT SCHEDULE RESTATED.  A PRINCIPAL AND INTEREST PAYMENT IN THE AMOUNT OF $27,500.00 WILL BE DUE JUNE 30, 2017; A PRINCIPAL AND INTEREST PAYMENT IN THE AMOUNT OF $27,500.00 WILL BE DUE JULY 30, 2017 AND ALL OUTSTANDING PRINCIPAL AND ACCRUED UNPAID INTEREST WILL BE DUE AUGUST 30, 2017.

LENDER NAME CHANGE.  SIERRA VISTA BANK IS NOW KNOWN AS CENTRAL VALLEY COMMUNITY BANK AS PER MERGER AGREEMENT DATED OCTOBER 1, 2016 .

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

CONTINUING VALIDITY.  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.   Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).   It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.  BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

CHANGE IN TERMS SIGNERS:

X _____
Rodica Alina Bancioaga

X _____
Darel Mitrut

**Composite Exhibit A**

Document                                                                                                              1

8-K 1 a8-ksvbaacquisitioncomplet.htm 8-K

# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

# FORM 8-K

### CURRENT REPORT

### PURSUANT TO SECTION 13 OR 15(d) OF THE

### SECURITIES EXCHANGE ACT OF 1934

**Date of Report (Date of earliest event reported): October 3, 2016**

# CENTRAL VALLEY COMMUNITY BANCORP
(Exact Name of Registrant as Specified in Charter)

| **California** | **000-31977** | **77-0539125** |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| **7100 N. Financial Drive, Suite 101, Fresno, California** | **93720** |
|---|---|
| (Address of Principal Executive Offices) | (Zip Code) |

Registrant's telephone number, including area code: **(559) 298-1775**

(Former Name or Former Address, if Changed Since Last Report)     **Not Applicable**

Check the appropriate box below if the Form 8-K is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☒  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Exhibit B

1

Document                                                                                                                    2

**Item 8.01        Other Events**

On October 3, 2016, Central Valley Community Bancorp (the "Company") issued a press release to announce the effectiveness of the merger of Sierra Vista Bank ("SVB") into the Company's wholly-owned subsidiary, Central Valley Community Bank. The aggregate consideration paid to SVB shareholders in connection with the merger was valued at approximately $26.26 million, paid in a combination of cash and shares of Company common stock that were registered under Registration Statement 333-212063, which was declared effective on August 3, 2016. The press release is attached as Exhibit 99.1 to this Current Report on Form 8-K and incorporated herein by reference

**Item 9.01 Financial Statements and Exhibits**

(d) Exhibits

99.1 Press Release of Central Valley Community Bancorp dated October 3, 2016

SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Central Valley Community Bancorp

Date: October 3, 2016          By:      /s/ David A. Kinross

Name: David A. Kinross

Title: Executive Vice President and Chief Financial Officer (principal accounting officer)

Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:                                    Case No.18-19151-LMI
                                          Chapter 7
RODICA A. BONCIOAGA AKA RODICA
ALINA BONCIOAGA,

            Debtor.
_____/

AFFIDAVIT IN SUPPORT OF
MOTION FOR RELIEF FROM AUTOMATIC STAY

STATE OF
COUNTY OF

        BEFORE ME, a notary public duly authorized to take acknowledgements and administer
oaths, on this day personally appeared   Donna Krumm   after having been duly
cautioned and sworn under oath, deposes and states as follows:

        1.    I am making this Affidavit in connection with and in support of the *Motion for
Relief from Automatic Stay* filed by Central Valley Community Bank, a secured creditor in the
above-styled bankruptcy proceeding.

        2.    Central Valley Community Bank ("Central Valley") is the holder of the subject
Note and Deed of Trust.

        3.    I am a *Special Assets Officer* (Job Title) for Central Valley. In said capacity,
I have access to Central Valley's computerized account records and have personal knowledge of
the facts stated herein. I make this affidavit on personal knowledge, based on my review of the records
of Central Valley, as they relate to the loan in this matter. The business records reviewed were made at
or near the time of the transactions described in them, by or from information transmitted by a person
with knowledge of the transactions. These records are kept in the course of Central Valley's regularly
conducted business activities, and it is Central Valley's regular practice to make and keep such records.

        4.    I have authority to make this affidavit. Further, I have personally reviewed the
records of Central Valley and make this Affidavit based upon personal knowledge obtained
therein.

        5.    I am familiar with the loan made on April 15, 2016 by Sierra Vista Bank to
Rodica Alina Boncioaga ("Debtor") and non-filing, co-borrower Dorel Mitrut (collectively the

Exhibit C

Affidavit of Indebtedness
Case No. 18-19151-LMI

"Borrowers") in the original principal amount of $1,500,000.00 ("the Loan"), which is the basis for Movant's secured status. The property is located at 2620 Huntington Road, Sacramento, California 95864 (the "Property").

6.      Central Valley maintains a computerized account of the Loan including all receipts and disbursements, charges, and credits.

7.      The amount of indebtedness and the nature and extent of default set forth in the *Motion for Relief from Automatic Stay* is derived from the computerized account of the Loan.

8.      As of August 14, 2018, the Note and Deed of Trust payments are in default as the loan matured on August 30, 2017 and is due and owing in full. Debtors have failed to timely meet and satisfy the payment requirements with respect to the obligations set forth in the Note.

9.      As of August 14, 2018, on examination of these business records, it is determined that there is now due and owing upon the Note and Deed of Trust and outstanding principal balance of $1,501,703.20, plus advances made, attorneys' fees and costs, and interest accruing thereon in accordance with the loan documents.

10.      This Affidavit is signed under penalty of perjury as being true and correct based on my personal knowledge of Central Valley and Movant's books and business records, and is intended to show that there is available competent testimony which can be introduced at evidentiary hearing if necessary.

**FURTHER AFFIANT SAYETH NAUGHT.**

_Donna Krumm_
AFFIANT

STATE OF: _California_
COUNTY OF: _Merced_

The foregoing instrument was sworn before me this _7th_ day of _September 2018_ by _Donna Krumm_, who is personally known to me and who did take an oath.

_Dalyah Davidson_
NOTARY PUBLIC

My Commission Expires: _8·16·21_

See attached



Exhibit C

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

---

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                    )
County of _____Merced_____          )
On ____9·7·18____ before me, _Dalyah Davidson, Notary Public_,
     Date                    Here Insert Name and Title of the Officer
personally appeared _Donna Krumm_
                                   Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                 Signature of Notary Public

DALYAH DAVIDSON
NOTARY PUBLIC · CALIFORNIA
COMMISSION # 2206059
MERCED COUNTY
My Comm. Exp. August 18, 2021

    Place Notary Seal Above

-------------------- OPTIONAL --------------------
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: _Motion for Relief From Automatic Stay_  Document Date: _____
Number of Pages: __2__  Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Donna Krumm_
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☒ Individual      ☐ Attorney in Fact
☒ Trustee      ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee      ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)   Item #5907

# INDEBTEDNESS
# WORKSHEET

### DEBT AS OF THE PETITION
### DATE

**A.**    **Total pre-petition indebtedness of debtor(s) to movant (if movant is not the lender, this refers to the indebtedness owed to the lender) as of petition filing date:**
**$ 1,672,004.84**

    1.  Amount of principal: $1,501,703.20

    2.  Amount of interest: $139,493.60

    3.  Amount of escrow (taxes and insurance): $0.00

    4.  Amount of forced placed insurance expended by movant: $ 0.00

    5.  Amount of attorneys' fees billed to debtor(s) pre-petition: $ 20,939.90

    6.  Amount of pre-petition late fees, if any, billed to debtor(s): $ 880.64

    7.  Any additional pre-petition fees, charges or amounts charged to debtors/debtors account and not listed above:
Trustee Fees : $8,792.50
Reconveyance/SB52: $195.00

**B.**    **Contractual interest rate:** _____9.95_____ **(if interest rate is (or was) adjustable, list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; list the exhibit number here:** 1 _____**.)**

Exhibit D

## AMOUNT OF ALLEGED POST-PETITION DEFAULT
### (AS OF 8/14/2018)

C.    Date last payment was received: <u>97/2017</u>

D.    Alleged total number of payments due postpetition from filing of petition through payment due on: <u>Matured 8/30/2017</u>.

E.    All post-petition payments alleged to be in default:

| Alleged Amount Due Date | Alleged Amount Due | Amount Received | Amount Applied To Principal | Amount Applied To Interest | Amount Applied To Escrow | Late Fee Charged (if any) |
|---|---|---|---|---|---|---|
| 8/30/2017 | $1,678,887.64*[1] | | | | | |
| | | | | | | |
| | | | | | | |
| Totals: | $1,678,887.64 | $ | $ | $ | $ | $ |

F.    Amount of movant's attorneys fees billed to debtor for the preparation, and filing and prosecution of this motion: $750.00

G.    Amount of movant's filing fee for this motion: $181.00

H.    Other attorneys' fees billed to debtor post-petition: $0.00

I.    Amount of movant's post-petition inspection fees: $0.00

J.    Amount of movant's post-petition appraisal broker's price opinion: $1,000.00

K.    Amount of forced placed insurance or insurance provided by the movant post-petition: $0.00

L.    Sum held in suspense by movant in connection with this contract, if applicable: $0.00

M.    Amount of other post-petition advances or charges, for example taxes, insurance incurred by debtor etc. (itemize each charge): $0.00

---

[1] The loan matured on April 15, 2017 and is now due and owing in full.

404-FL Southern-V1

Exhibit D

**Exhibit 1**

**Interest Rate Payment Change**

| Origination | to | | 5/10/2017 | int % | 5.95 |
|---|---|---|---|---|---|
| 5/10/2017 | to | | 8/22/2018 | int % | 9.95 |

Exhibit D

Case 18-19151-LMI    Doc 12    Filed 08/13/18    Page 1 of 32

| Fill in this information to identify your case and this filing: |
|---|

| Debtor 1 | **Rodica A. Boncioaga** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION | | |
| Case number: | **1:18-bk-19151** | | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

1.1

**2620 Huntington Rd**
Street address, if available, or other description

**Sacramento**   **CA**   **95864-5634**
City           State        ZIP Code

_____

County

**What is the property?** Check all that apply
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**House**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$1,527,578.28** | **$1,527,578.28** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**Homestead**

☐ Check if this is community property (see instructions)

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here........................................=>

| **$1,527,578.28** |
|---|

**Part 2:** Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Exhibit E

Debtor 1  **Boncioaga, Rodica A.**                    Case number *(if known)*  **1:18-bk-19151**

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| 3.1 | Make: | **Hyundai** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*. |
|---|---|---|---|---|

Model: **Santa Fe AWD**

Year: **2017**

Approximate mileage:

Other information:

**VIN# 5NMZU3LB7HH049511 (Auto Lease)**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Current value of the entire property?   **$16,175.00**

Current value of the portion you own?   **$16,175.00**

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

**5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.........................................=>**   **$16,175.00**

**Part 3:  Describe Your Personal and Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes. Describe.....

**1 King Bed, 2 Queen Beds, 2 Night Stands, 1 Dining Table, 6 Dining Chairs, 1 Computer Desk, 2 Sofa's , 1 Love Seat, 2 Desk Chairs, 1 Computer Chair**     **$2,000.00**

**7. Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
■ Yes. Describe.....

**3 Computers, 1 -52 Inch TV, 1-32 Inch TV**     **$800.00**

**8. Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
■ No
☐ Yes. Describe.....

**9. Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
■ No
☐ Yes. Describe.....

**10. Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
■ No
☐ Yes. Describe.....

Exhibit E

Case 18-19151-LMI    Doc 12    Filed 08/13/18    Page 3 of 32

| Debtor 1 | **Boncioaga, Rodica A.** | Case number *(if known)* | **1:18-bk-19151** |
|---|---|---|---|

**11. Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
■ Yes.  Describe.....

| Used cCothing of No Value Except to Debtor | $100.00 |
|---|---|

**12. Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
■ No
☐ Yes.  Describe.....

**13. Non-farm animals**
*Examples:* Dogs, cats, birds, horses
■ No
☐ Yes.  Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
■ No
☐ Yes.  Give specific information.....

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ..................................................................................

| $2,900.00 |
|---|

**Part 4:**  **Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**16. Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
■ No
☐ Yes..................................................................................................................

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
■ Yes.......................     Institution name:

| 17.1.  **Checking Account**  Chase Bank # ▓▓▓▓ | $593.56 |
|---|---|

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
■ No
☐ Yes................     Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
■ No
☐ Yes.  Give specific information about them...................
     Name of entity:     % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
■ No
☐ Yes.  Give specific information about them
     Issuer name:

Official Form 106A/B                    Schedule A/B: Property                    page 3
Software Copyright (c) 2018 CINGroup - www.cincompass.com

Exhibit E

Case 18-19151-LMI    Doc 12    Filed 08/13/18    Page 4 of 32

Debtor 1    **Boncioaga, Rodica A.**    Case number *(if known)*    **1:18-bk-19151**

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
■ No
☐ Yes. List each account separately.
  Type of account:    Institution name:

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
■ No
☐ Yes. ...................    Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
■ No
☐ Yes............    Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
■ No
☐ Yes............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
■ No
☐ Yes. Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
■ No
☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
■ No
☐ Yes. Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**
■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else
■ No
☐ Yes. Give specific information..

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
■ No
☐ Yes. Name the insurance company of each policy and list its value.
  Company name:    Beneficiary:    Surrender or refund value:

Software Copyright (c) 2018 CINGroup - www.cincompass.com

Exhibit E

Case 18-19151-LMI    Doc 12    Filed 08/13/18    Page 5 of 32

| Debtor 1 | **Boncioaga, Rodica A.** | Case number *(if known)* | **1:18-bk-19151** |
|---|---|---|---|

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
☑ No
☐ Yes. Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
☑ No
☐ Yes. Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
☑ No
☐ Yes. Describe each claim.........

**35. Any financial assets you did not already list**
☑ No
☐ Yes. Give specific information..

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.....................................................................................................**

| $593.56 |
|---|

**Part 5:    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**37. Do you own or have any legal or equitable interest in any business-related property?**
☑ No. Go to Part 6.
☐ Yes. Go to line 38.

**Part 6    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
☑ No. Go to Part 7.
☐ Yes. Go to line 47.

**Part 7:    Describe All Property You Own or Have an Interest in That You Did Not List Above**

**53. Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership
☑ No
☐ Yes. Give specific information.........

**54. Add the dollar value of all of your entries from Part 7. Write that number here ...................................**

| $0.00 |
|---|

**Part 8:    List the Totals of Each Part of this Form**

| | | |
|---|---|---|
| 55. Part 1: Total real estate, line 2 ............................................................................................................... | | $1,527,578.28 |
| 56. Part 2: Total vehicles, line 5 | $16,175.00 | |
| 57. Part 3: Total personal and household items, line 15 | $2,900.00 | |
| 58. Part 4: Total financial assets, line 36 | $593.56 | |
| 59. Part 5: Total business-related property, line 45 | $0.00 | |
| 60. Part 6: Total farm- and fishing-related property, line 52 | $0.00 | |
| 61. Part 7: Total other property not listed, line 54 | + $0.00 | |
| 62. Total personal property. Add lines 56 through 61... | $19,668.56 | Copy personal property total  $19,668.56 |
| 63. Total of all property on Schedule A/B. Add line 55 + line 62 | | $1,547,246.84 |

Official Form 106A/B                              Schedule A/B: Property                                                page 5

Exhibit E

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Rodica A. Boncioaga** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION |
| Case number | **1:18-bk-19151** |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property                                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. **Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor 's name.

| | | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>If any |
|---|---|---|---|---|---|
| **2.1** | **Central Valley Community Bank**<br>Creditor's Name<br><br>**7100 N Financial Dr # 101**<br>**Fresno, CA 93720-2900**<br>Number, Street, City, State & Zip Code | **Describe the property that secures the claim:**<br>**2620 Huntington Rd, Sacramento, CA 95864-5634 House**<br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $1,527,578.28 | $1,527,578.28 | $0.00 |

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred  **01/18/2018**          Last 4 digits of account number ▆▆▆▆

| | | | | | |
|---|---|---|---|---|---|
| **2.2** | **Fidelity National Title**<br>Creditor's Name<br><br>**1430 Blue Oaks Blvd**<br>**Roseville, CA 95747-5155**<br>Number, Street, City, State & Zip Code | **Describe the property that secures the claim:**<br>**2620 Huntington Rd, Sacramento, CA 95864-5634 House**<br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $75,000.00 | $1,527,578.28 | $75,000.00 |

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred  **01/18/2018**          Last 4 digits of account number _____

Software Copyright (c) 2018 CINGroup - www.cincompass.com

Exhibit E

Case 18-19151-LMI    Doc 12    Filed 08/13/18    Page 9 of 32

Debtor 1  **Rodica A. Boncioaga**                                                Case number (if known)  **1:18-bk-19151**
_____
First Name    Middle Name    Last Name

| 2.3 | **Remy T. Handal** | Describe the property that secures the claim: | $250,000.00 | $1,527,578.28 | $250,000.00 |

Creditor's Name

**2620 Huntington Rd, Sacramento, CA 95864-5634**
**House**

**8951 Osage Ave**
**Sacramento, CA**
**95828-1125**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred  **01/18/2018**      Last 4 digits of account number _____

| 2.4 | **Safe Credit Union** | Describe the property that secures the claim: | $806.00 | $0.00 | $806.00 |

Creditor's Name

**3720 Madison Ave**
**North Highlands, CA**
**95660-5024**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred  **2009-06**      Last 4 digits of account number ▊▊▊▊

Add the dollar value of your entries in Column A on this page. Write that number here:  **$1,853,384.28**
If this is the last page of your form, add the dollar value totals from all pages.
Write that number here:  **$1,853,384.28**

**Part 2:  List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐ Name, Number, Street, City, State & Zip Code
**Denyce Skiff, Trustee**
**of the Criss Skiff Trust**
**409 Barusch Ct**
**Roseville, CA 95747-8114**

On which line in Part 1 did you enter the creditor?  **2.2**
Last 4 digits of account number ____

☐ Name, Number, Street, City, State & Zip Code
**Michael Stahl**
**19333 Collins Ave # 1506**
**Sunny Isles Beach, FL 33160-2371**

On which line in Part 1 did you enter the creditor?  **2.1**
Last 4 digits of account number ▊▊▊▊

Official Form 106D    Additional Page of Schedule D: Creditors Who Have Claims Secured by Property    page 2 of 3

Exhibit E

Debtor 1    __Rodica A. Boncioaga__                   Case number (if know)    **1:18-bk-19151**

First Name      Middle Name      Last Name

☐ Name, Number, Street, City, State & Zip Code
**Mickey Iliescu**
**7111 Main Ave**
**Orangevale, CA 95662-2813**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number _____

☐ Name, Number, Street, City, State & Zip Code
**Pedro Jiminez**
**600 Brickell Ave # 3300**
**Miami, FL 33131-3072**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number _____

☐ Name, Number, Street, City, State & Zip Code
**WT Capital Lender Services**
**Debra Francesconi, Senior VP**
**7522 N Colonial Ave # 101**
**Fresno, CA 93711-5865**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number _____

Software Copyright (c) 2018 CINGroup - www.cincompass.com

Exhibit E